Good afternoon, your honors. May it please the court, my name is Elizabeth Daly. I am here representing appellant Dan Heine and also for purposes of today's argument, I'll be presenting argument for both co-appellants Dan Heine and Diana Yates. With the court's permission, I'll try to reserve five minutes of my time for rebuttal. This case involves the conviction of two bank executives based on unprecedented expansions of the federal bank fraud statute beyond its core purpose and in intervention of the clear trajectory of Supreme Court's narrowing precedent. We're asking the court to reverse based on the government's presentation of three legally invalid theories at trial. Specifically, in close background question, I have a penchant for this. Why are we looking at the government's background theories at trial? The question is ultimately a sufficiency of the question, right? You're not challenging any instruction. No, your honor, this is an invalid legal argument. What the government said in closing argument. So the question is a sufficiency question, right? No, your honor, I disagree. We're under the rule from Yates, which was addressed in Griffin and in this court's precedent in Verona. What I would say from Yates is the rule is that when a general verdict may rest on an impermissible theory of guilt, and we can't tell that it didn't rest on the impermissible theory, then reversal is required. And those cases have nothing to do with the instructions that were given. The issue in Yates was an invalid objective of the fraud. I think Verona is the best example of a case where it wasn't about the instructions but was about the argument presented by the government. In Verona, it was a continuing criminal enterprise case where the government argued to the jury that the five individuals that were required to be supervisees, they said, well, we have an abundance of individuals that could qualify. Here's 12. Here's eight individuals. And all of those were presented to the jury in argument. When the case was submitted to the jury, it was submitted to the jury on instructions that tracked the statute, and there was no error in those instructions. But because some of the the court held that it was an impermissible legal theory presented to the jury. And the court in Griffin, they quoted in Verona, explained that this rule, this invalid legal theory rule, makes good sense because jurors, by contrast to how they handle facts, are not equipped to determine whether a particular theory of conviction submitted to them is contrary to law. And they went on to say when jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. These legal theories that were presented to the jury in this case were fully vetted by the district court in advance. They were presented in the indictment. They were presented in pre-trial proceedings and approved by the district court. And they were ultimately argued in closing argument. And that is an error if any one of those theories is invalid. I think the distinction that I want to make sure that the court focuses on between the invalid legal theory and the sufficiency is that there is no deference to the government's version of facts in the context that we're in. And moreover, we know from Verona that the general verdict itself can't cure the error. So there's no typical respect for what the jury decided because the jury was given a ground that was legally impermissible. With that framework, I won't... Go ahead, Ryan. Could I ask you to... I mean, I take it you're about to turn to the different theories, but could I ask you to address the salary and bonus theory? I mean, would you agree that if you had a case where, you know, the employer says, you know, if you meet the sales target next month, you know, you'll get a bonus. And the employee, you know, concocts a fraudulent scheme to make it appear as if he's met the sales target when in fact he hasn't. So he gets the bonus. But that qualifies as, you know, a scheme to obtain money or property? What I would say is that I think that is very distinguishable from our case. What's the difference? I can agree with that principle. So the principle is that I think the government's framing this as sort of a pedestrian application of what the statute is. But in reality, it's a performance based salary theory that appears nowhere in precedent. And the reason I think it's unique is because it goes to any scheme to exaggerate the quality of one's work, to hide information from one's superiors about how one's performing their work. When it goes to the quality of your work product, your work performance, how you're doing your job, and your salary is tied to how you do your job, then virtually any scheme to be deceptive within the scope of your employment would be turned into fraud. And the reason that's important, I think, a few things is that one, we're within federal bank fraud. And this role, this would implicate the bank's role as its employer, a common role that any, you know, employer performs deciding compensation. But also, we have this long line of Supreme Court precedent, where they have repeatedly and fairly consistently rejected these expansive theories that would in turn an extensive amount of conduct traditionally regulated by the states into federal fraud. And so this was discussed in McNally, it was discussed in Cleveland, in Skilling, McDonnell, Bond, Yates, Kelly, and I'm probably missing some. And all of these, go ahead. On the salary bonus theory, I think you make some valid points about the salary of a bank employee who essentially has nothing to do with banking. But what about, you know, bank executives, and particularly the bonus component? Because there does seem to be evidence here from which a jury could conclude that the defendants were undertaking this scheme in part at least to be able to achieve bonuses given, not only because they wanted that generally, but because they had their own particular reasons for needing that financially. And so why wouldn't that, you know, when you have senior bank executives coupled with extra compensation, bonus type compensation, performance compensation, why wouldn't that be sufficient? I think that Judge Miller's point was well taken here, that this case isn't a case where there was a particular financial metric that was linked to a particular financial reward. And that would be the type of narrowing construction of the statute that could save it from vagueness, as the court has discussed in, for example, skilling. But when it's that your job was performed dishonestly, and had your employers known that you performed your job dishonestly, they may not have approved a salary increase, they may have fired you and you would no longer be receiving your salary. There was a bonus component here, but the bonus was the bonus just if you do your job, well, we'll give you more money? I think that's right, Your Honor, that the bonus was not tied to a particular financial metric. It wasn't that the bank was saying, good job, you met the tier one capital rates, which they honestly admitted that they had never met. It was that the whole performance of the bank, the whole management of the bank, and there was much discussion of this in closing arguments about what are the, you know, half a dozen factors that the bank might consider in deciding salary and deciding a bonus. And there was no particular factor that resulted in the bonus that can be linked to a particular deception proved in this case. I believe the notion that they're to change gears from the employment context, and I noticed the government is not as such defending the accurate information theory, although they seem to have tied it into a property rights notion. But what they did do was divert bank funds, finance and proper loans and credit lines, or at least that was the allegation. Why isn't that enough, at least as to the claims that that goes to, as to the accounts that that goes to, to constitute property? Your Honor, I didn't understand the diverting of bank funds to be the primary theory the government presented a trial. The primary theory or subsidiary theory is a theory. So what about that? And so I have two responses to it. First, it would not cure any error from the accurate information theory. So if this court determines that accurate information standing alone is not a valid theory of prosecution, that is the error that requires reversal and no argument, either the salary theory or these backup arguments that they're now raising on appeal. Let's say there's no harmless error component, but there are some cases that suggested there is a harmless error component. I agree that harmless error does apply here, but the standard requires the court to draw inferences in favor of the defense. It's a tall order to say that the primary objective pursued by the government from indictment through pretrial, all the way through the end of closing, and then continued to be justified after closing, where it's the easiest path to conviction. It's a tall order for the government to now come back and say, we know that the jury did not adopt that theory. We can tell that they would have convicted or that this improper theory that we argued to them did not influence their verdict. The accurate information, quite honestly, was the easiest way to get to a conviction here. But I mean, isn't the difficulty here with that position that there are numerous transactions, numerous examples, the Avenue A property, the Kehoe loans, all these instances in which the defendants did take bank funds and use them for a purpose that they didn't properly disclose. And this didn't just happen once, it happened on multiple occasions and in different ways. And the jury heard all of that. And so it seems quite clear they took something of value. So I just, isn't it- Your honor- Yeah, go ahead. I'm sorry, I didn't mean to interrupt. Not at all, go ahead. My response is based on Kelly, which is the case that says, it's not enough that you've deprived of something of value. That's not the element of bank fraud. The element of bank fraud is that depriving of something of value is your purpose, your goal, your aim. And in Kelly, they were very clear that implementation costs, that incidental byproducts- No, but the things that Judge Bress was talking about and I'm talking about were directly what they authorized. An unsecured $675,000 wire transfer to Kehoe. And they recommended the approval of a $1.7 million loan to Kehoe. And they issued a cashier's check from bank proceeds. All of that is money from the bank that is going out to other people in an unauthorized fashion. Why isn't that sufficient? Well, your honor, I'd say there's a reason that the government didn't argue that below, which is because the defendants didn't personally benefit from that. The government agreed on multiple occasions below that the goal- But we know they don't have to personally benefit. They don't have to personally benefit, but there has to be a motive for them to have wanted those funds. That has to be their purpose. In the Kelly case, they said, of course, the defendants wanted the Port Authority employees to be doing this work. That was how they implemented their goal. But where they wanted to have something that wasn't something of value was they wanted political payback. In this case, the government didn't pursue the theory that use of bank funds was the purpose of this conspiracy because the use of bank funds was what allowed the conspiracy to continue on the government's view. The defendants didn't want $265,000 to purchase A Avenue. They wanted the bank to recoup a loss from A Avenue, and they wanted the bank's books to look better, according to the government's theory. I would also remind the court that this is viewed in inferences favorable to the defendant. I think that the evidence in the light most favorable to the defendant would suggest that the defendants weren't involved in the $675,000 keyhole wire. Could you address the relationship between the conspiracy count and the false entry counts? Your argument is that if we were to reverse on the conspiracy count, the false entry counts have to be reversed because they were based in part on Pinkerton. But for at least some of them, isn't there a lot of non-Pinkerton evidence of direct involvement by some of the defendants in the false entries? Under the standard for harmless error that's applicable here, the Pinkerton charge makes these errors harmful for the false entry counts, and I didn't understand the government to be raising a different argument as to those false entry counts. I would like to hear more about the false entry counts because your argument is that there really weren't false entries. Yes, Your Honor. The questions that were asked were answered accurately and that this notion that money, they keep calling it third-party payments, but when they finally specify it more, it's unauthorized third-party payments. Or at least as their witnesses did. In other words, everybody seems to agree that if your mother pays your mortgage, that doesn't matter. The problem is that the people who are paying these, that the people who know these other people who are paying the mortgages. But so your position is that there's still no false entry, that that requirement is somewhere in other people's heads, but it's not on the piece of paper. That's why I essentially understand your dissent. Yes, Your Honor, and that goes to the five counts involving false entries with respect to the delinquent, the call reports for the delinquent loans. There was a single piece of information that was asked for, and that was whether, that was for the entire balance of the bank's loans that had not been paid by a certain date. Your Honor, I see that I'm running out of time. I'm going to address this point. And if there are other questions, of course, I'll address them. But the undisputed evidence, even from the FDIC expert worthing, is that a customer doesn't have to authorize a payment for it to be received by the bank. That your grandmother can pay your student loans even without telling you that she's doing that, that is appropriate for the bank to receive, and it's appropriate to then deem that loan non-delinquent. If somebody's grandmother pays their loan, that doesn't suggest anything about the overall health of the loan. I mean, but here it's quite a bit different. You had the bank essentially funding the loan payments, thereby suggesting that somebody legitimate was paying the loan. That wasn't true here, though. It seems like a very different situation than the grandmother paying the loan. I disagree with the requirement that it has to suggest anything. What was asked here was a certain piece of information, and the information that was provided was true. The elements of the false entry count require both that the entry be false and that it be deceptive. In order to be false, the delinquent loans had to actually be delinquent. And what was passed was whether it was past due. What was the exact wording of the question? Your Honor, I can pull that up. What I'm looking at is your little picture on your brief, and it says column A, column B, column C, past due 30 through 89 days and still accruing. And then you just check it off. Is that what it is? Past due is the, I think, relevant term there. Thank you for having that available. And there is a 12-page instruction manual from the FDIC, and nothing in there says that a loan is past due if the bank has received payment. And I don't think anything in the expert testimony or anything else would support the conclusion that a loan is past due if the bank has, in fact, received payment. If that's a good stopping point, Your Honors, I'd like to reserve my final minutes. Thank you very much. You've been very helpful, Mr. Lieberman. Thank you, Your Honors. Good afternoon. May it please the Court, Dave Lieberman. I wouldn't mind starting with the second question because it seems terribly powerful to me. I don't understand where the notion comes from that answering the question that's asked and without any directive as to why it should mean anything else is a false statement. So that, Your Honor, the evidence at trial showed that everybody had an accepted understanding. So is that the way you create criminal... It's not written down anywhere, and it's not applied by what's on the piece of paper. And I understand they may have been being coy, but they are answering the question they were asked. Well, so the FDIC... This is at Excerpt 2800. The FDIC manual defines a loan as past due when the borrower is in arrears. And what does it mean? Well, I know, but everybody agrees that if the grandmother was paying, certainly with knowledge and probably without, there isn't a problem. Is that right? The defense elicited... You can't read into that borrower statement the notion that the money has to come out of the borrower's pocket because everybody agrees it doesn't. I think in the grandmother hypothetical, when the grandmother walks in and pays for the loan payment on behalf of the borrower, the grandmother has the loan account, the grandmother has the borrower's name. And so the bank assumes that there is a relationship or an arrangement... I know, but this is all not on a piece of paper or anywhere anybody would know that there's a distinction between a grandmother who is paying without knowledge and somebody else who's paying without knowledge. What are you supposed to do other than... If the money has been received by the bank and so the bank has the money, why should they... Maybe they know that they're being cued, but do they know that they're... This is what tax people and banks and everybody who fills out government forms does all the time. What are they asking me? And do I have to tell them more than they're asking me? And they weren't asking that question. So the evidence below was not just testimony, but from the defendant's own emails showing that the question of when is the loan passed due, it's when the borrower stops paying. And the jury was entitled to accept... But we all know that that isn't true because it doesn't have to be the borrower. So... Everybody seems to agree to that also. Accepting that, the jury still had ample basis to convict the defendants of these false statement counts. And let me explain. And counts seven, eight, and nine, and this is addressed by the district court on 87 through 88 or nine of the excerpts. And these were the delinquencies by Abrams, Duffy, and Goodman. And as the district court noted, what the defendants did is they arranged a loan to... Fraudulent disbursement of a loan to Kehoe. These delinquencies emerge, and then they invite Kehoe to send the loan proceeds back to the bank. And so this is, as the district court recognized, really just a shell game of bank proceeds going out and coming back in. And so even if you accept the defense argument that it can be the borrower plus somebody else, in this case, there was no actual payment by an outside payment coming into the bank from either the borrower, a friend or family member, or anybody else. It was just- Is that true as to all of the charges, all of the counts? That's through seven, eight, nine. It is also true of count 13. This was the count of the Dudley loan account where Ms. Yates directs the transfer of $23,000 from a political campaign account into the Dudley loan account to cure that delinquency. There's no payment into the bank there. This is just Ms. Yates moving funds, and the testimony below was she had no authorization to move that from the political campaign account. And we cited to the Seventh Circuit's decision in the Marquardt case. When a bank employee just makes a transfer or a payment or moves money on a customer account without authorization from the customer, that's not a payment. That's not a transaction. It's entirely fictitious. It is cooking the books. And so that, so it's seven, eight, nine, and 13. Those are the counts that there was, the evidence shows the bank actually did not receive an outside payment from anyone. It was just the shell game that was created during the scheme. I do agree that, to your point, Your Honor, count 15 is the hardest to defend once you bring in the friends and family exception, but I think I can do it because that was when loan officer Walsh makes a payment on the Guttler account on the last day of the quarter. And the men testified, this is at SER 820 and 977. They're not friends. They don't have a social relationship. This is just a bank employee bringing a customer's loan account current. So why does it matter if they're friends or not? I mean, I mean, either, you know, the account stops being passed due once some money comes in, or it doesn't. I mean, whether they're friends or not, you might go to whether this is part of a overall scheme that they, you know, maybe for other reasons shouldn't be engaged in, but I don't see how it bears on the falsity of the statement. Well, I think it bears on the fact that it's not just that this was, it's not a friend or family member. This was a bank officer making the payment to keep a customer's loan current. That would be like if the CEO just started paying all the accounts on delinquent loan balances to avoid reporting that to the FDIC. That seems as the district, I'm sorry, the district is not- It's extremely shady, and it seems like there's all sorts of things wrong with it. But the question is whether it's a false statement for this answer to this particular question. Your Honor, I agree that this is, this is the probably the closest count. Well, let's do all of them. All right, do you want to get back to the government hearings and so on? Yes. Can I turn back to the, unless the court has any more questions on the false statement counts, can I turn to the lead? So on the bank for a conspiracy count, let me start with the last theory that the defendants misled the board of directors regarding the use of bank funds. We expressly argued that in closing, and the evidence showed that the defendants arranged financing for loans or projects by disguising the true purpose of the loan from the bank's loan committee and the board of directors. That is straightforward bank fraud. But they weren't using, I mean, what's your answer to your friend's point that it would be different if they were directing that the bank funds be given to themselves, right? But the object here was not to obtain the funds. It was, you know, they were moving the funds around and having them paid out as an incident to their scheme to make things look better than they really were. So it's like in Kelly, you know, they're using the victim's resources for some other purpose. Why is that analogy flawed? The evidence shows that the object of the scheme, so the bank gets to decide how to use its property, in this case, the bank funds. So the bank gets to decide how it wants to loan something to borrowers or finance a project. And the defendants deprived the bank of making those decisions with respect. But the port authority gets to decide how it uses its personnel and its resources and its traffic lanes. But the conviction was reversed in Kelly because that wasn't the property that was the object of the defendant's scheme. So how does that help you? I think the object of the defendant's scheme was they wanted to make decisions about where the money should go. Let me ask you, is this argument a version of the accurate information argument? It's an attempt, as I understand it. The way you argued it to the jury was that there was essentially a property interest in accuracy of information. This is just a version of that. Is that right? No, so we argued three points below. We argued the accurate information and I wanna get to that. We argued that the defendants misused bank funds for these transactions. And then we argued the salary and the benefits theory. We also- But the way you're arguing now, it's not misused bank funds. You're now arguing that it has to do with the board of directors making decisions about the bank's solvency, essentially. I mean, the notion that, or is your point that the money, as we were saying before, that the money went out from the bank in this respect and therefore that was the property of the bank? Is that your argument? Yes, and let me- So that has the problem or maybe has the problem that Judge Miller is suggesting. That wasn't the property of the bank. Let me try to drill down on this with respect to one transaction, the A Avenue transaction. And the testimony below was the bank gets to decide when it wants to loan money to bank employees or insiders, or I'm sorry, the board of directors decides that. In this case, or in the A Avenue transaction, the defendants arranged to give the junior employee bank funds to finance this purchase. That decision to give money or loan money to a bank insider belongs to the bank through the board of directors, not to the defendants. So that's not a focus, therefore, on the fact that the money went out from the bank. It's a focus on the right, and you say this more directly in your brief, that there's a property interest in the board of directors on behalf of the bank making that decision. That's a different issue than the money going out from the bank. In order to characterize that as property, it seems to me you're getting pretty close to the level of abstraction that you have on the accuracy of information. It's not, you're not now saying that just the fact that money came out from the bank means that property was the object. And I guess you're not saying that because of the problem that Judge Miller identified. That's not what you're saying. And I apologize if I misspoke. It's the bank's ability to decide how it wants to use its proceeds. That is what the defense deprived of them. And I can give you- And that's a property interest? Yeah, so I can give the- That's cognizable, it's a cognizable property. If I can make a foil to Shaw. So in Shaw, the Supreme Court says that the bank's right to possess the money in its vaults, even if it belongs to a borrower, is a property interest because that possessory interest gives the bank the right to decide what to do with that various money. That it's allowed by a depositor. When the depositor gives it over to the bank. I thought it was because, as a matter of property law, they have a property interest in that money when it's in the bank. Right. So this, with respect to the funds in the A Avenue transaction, that was money belonging to the bank. And so the bank gets to decide how it wants to, it does, do I want to loan it to Danny Williams or finance Danny Williams's transaction? What happened here is that the defendant circumvented the bank via the board of trustees to make the decision about, are we going to give Danny Williams this money? That is the decision about what to do with this money. Give it to this person, give it to them. That is bank property. Judge Berzon, I'd like to go to the accurate information theory that you've posed a couple of questions on. It is, you're absolutely correct. You don't defend that. We don't defend that accurate information standing alone as a cognizable interest. And I acknowledge that- And you did tell the jury that, didn't you? Yes. At the start of our slide, we listed- At the starting and the closing and so on, in some way. Yes, we listed, I think it's fair to say, in shorthand, our three theories. And we said accurate information in the bank's books. But I think the closing argument needs to be read in context. And that would include the two pages following our bullet pointed list. So this is excerpts 2107 through 2108. We tied the accuracy of the bank's information to its loan collection rights. The board of directors relies on the accuracy of the information, particularly records about delinquencies. We continued, our prosecutor continued that the bank needs this information, quote, to analyze the risks posed by the various borrowers who are late. We displayed a PowerPoint presentation, excerpts 484. Delinquent knowns need careful analysis to determine whether collection action is necessary. So it wasn't this ethereal right of information standing alone. We tied it back to the bank's right of collection when you look at these entire two pages of the closing argument. And I think that the Supreme Court has been quite clear in Pasquitino. This court was quite clear in Ely. The bank's collection rights, that is certainly cognizable of property interest under the bank fraud statute. And I just want to drill down on that point. The bank in ordinary times has a right to get a monthly loan check from the borrower. But what happens when the borrower stops paying as it did in this case? The mortgage loan agreement gives the bank additional second tier collection rights. That's the right to accelerate payment. That is the right to initiate foreclosure proceedings, force a sale of the borrower's property, and take the proceeds of that sale to satisfy the outstanding debt. These are not ethereal rights. These are not intangible rights. Yes, was any of this actually an object of the conspiracy either? Because the object of the conspiracy, as I understand it, was essentially for purposes of the FDIC to make the bank look to be in better position than it was, not necessarily for the board of directors. It was, Your Honor. To be able to collect things in a different way and demonstrate that they were in fact in trouble because these people were not in fact paying. That was, right? So Your Honor, by hiding these loan delinquencies in the records, by stating that loans were current when they were actually delinquent, the object of the evidence showed exactly why. Because when banks have bad loans on their books, they have to recognize losses on their books. This is SCR 13-4. Right, right. But that doesn't have anything to do with what you were saying before about the bank director's ability to take some other actions, which would have required first acknowledging that these were bad loans. But I think those are one and the same, Your Honor. So if defendants deprived the bank of its right to pursue these more aggressive second-level collection techniques, that was part and parcel of their decision, and this goes to that salary theory, to keep the bank's books looking good. They're not two separate objectives. They want, remember, they're under heavy regulatory scrutiny in 2010 and 2011. They don't want these bad loans recognized on the books for institutional reasons and for personal reasons. And that goes to the salary and benefits theory that the court started out with. The defendants lied about a particular performance metric, which they knew it was a performance metric that the bank used. The bank's bottom line is profits. What's the performance metric? The bank's financial health. This is at SCR 399 to 400. The bank, excuse me, the board of trustees set the defendants' compensation by the financials, the profits. But it wasn't tied in some very specific way. Like, you know, if you meet this target, you get the... It was just, you know, if we think the bank is doing better, we'll think you're doing a better job and we'll pay you more, right? I mean, isn't that a more accurate description of the relationship? I agree that there are several factors that the board used. So there wasn't necessarily the one-all, end-all, and be-all. But the question is, does the evidence support the jury's finding that the object of the lie about the profits in the bank that they... Well, then let me ask you, I mean, suppose you have a bank employee and he's hired to do, you know, banking stuff. And instead of doing the stuff he's supposed to do, he spends his day wasting time on the internet. And he lies to his bosses about the fact that he's not really doing his job. And part of the reason he's lying to them is if they knew the truth, you know, they would fire him and he would no longer get his salary. Is that bank fraud? Your Honor, the honest answer is I don't know. And that's the maintenance theory. I lie to avoid supervisor scrutiny. I lie to keep my position. I've looked high and low. I can't find instances in the case law that discusses a lie to maintain the status quo. And so I agree, that may not be bank fraud. I just don't really have any guideposts from this court or any other court to tell you where the line is. The distinction I've made- You're calling it the status quo, but it seems like on your view, you could just as easily call it, it's a lie to obtain the salaries and benefits of his position. Why isn't it the same as what you're arguing here? I think the distinction here is that the object of the scheme was to gain new money, additional money in the form of increased salary, making a misrepresentation- What is the evidence? Well, two things. First of all, you had several theories and there is at least a harmicera standard. So if that were a viable theory, you'd still have to be able to get by a harmicera standard if the other two weren't viable. So I'd like to hear about that. And secondly, two somewhat interesting questions. Secondly, I mean, I gather there's a relatively small amount of money that was tied up in a bonus at the end of the year. And it's a different- Any employee knows that if they do a good job, and they go and they say, I want a salary increase, they may well get a salary. If the bank's profitable. So what's the difference between, we're going to give you a $50,000 bonus at the end of the year, or at the end of the year, if you do a good job, we'll give you a raise. I'm not sure that there is a difference. There's no, if it's $100 or if it's $50,000, if the object of the lie is to obtain money belonging to the bank, in this case, in the form of increased compensation, that qualifies under the bank fraud statute. And the Supreme Court's decision in Laughlin, now that's a 1344-2 case. But the dispute in that case only involved 200- I'm not saying the amount of money. I'm saying, what's the difference between a bonus, vague bonus system, and the inherent vague raise system that ordinarily entails? Is there a difference? The jury has to find whether they expressed object of the lie. All right, that's what I wanted. My next question. What evidence is there that this was an object of the conspiracy, of the fraud? So this would be at the email sent to the board at SCR-2407. The defendants in this, I believe, was written by Ms. Yates and copied with Mr. Heine copied. Citing the bottom line health of the bank and the profits, the defendants seek compensation. They seek additional salary from the bank at the end of 2011. After the two-year period where the vast majority of these transactions occur, and they are able to say, the financial health of the bank is strong. Our profits are strong. Those were the misrepresentations tied- Are they seeking an additional salary in the sense that I'm saying, i.e. next year we should have a higher salary? Or are they seeking this end-of-the-year bonus? I think the answer is they were just asking for additional compensation. I don't recall them- Well, right. So therefore, your theory has to encompass the notion in which they were just saying we did a good job and we want more money next year. Yeah, yes. So I point the court to Exodus 2061, where the district court and the parties have this exact same topic that we're having now. And Mr. Heine's counsel says, in the proper case, the salary theory would be appropriate. If somebody is putting in for a raise and in connection with the raise, they mislead. I think that's what the evidence says here. And that's exactly what some of the case law that we cited below, where this was the Second Circuit's decision in the Vendee case. And they put in a number of sort of hypotheticals, and we cited a few in our brief. And one of which they cited a number of wire fraud prosecutions involving attorneys who misrepresented the nature and quality of their legal services, and then told their clients, give us more money. I think that this is factually analogous. The defendants misrepresented the nature and quality of their management of the bank and said, give us more money. Now, I take it, I mean, the limit to your theory is that the nature of the misrepresentation was essentially the core part of the banking business. I mean, it would be, I suppose, different, for example, if, you know, let's just say the bank wanted to encourage its employees to, you know, volunteer their time to worthy causes. And if you did that, you can come in and tell the bank, and they might give you a little performance bonus or a little extra money around the holidays. If you came in and said, I volunteered, you know, for 20 hours, and in fact, you'd only volunteered for 10 hours, that really has nothing to do with the nature of business in the bank. It's hard to see how that would qualify. But here we have performance metrics tied to the very health of the bank, and these are the leaders of the bank. I agree with that wholeheartedly, Judge Brest, in that the lie here was about the core way that the bank set the defendant's compensation, as opposed to the hypothetical where I was surfing on the internet for an hour, rather than working on these loan applications that the defendants knew that this was how the board of directors set their compensation as evidenced by their emails to the board asking for additional compensation. I know you're over time, but could I ask you to address the question I asked, Ms. Daley, which is, if we were to reverse the conspiracy count, given the Pinkerton instruction, what does that mean for the false entry counts? So I think that we were discussing some of the evidence with respect to those counts. I think you would have to perform some sort of harmless error analysis. And the evidence here was that the defendants were directly involved in, for instance, preparing the FDIC reports and some of the other reports. And so if you have the personal involvement, then I think those counts would still stand. Okay, you are well off your time. Thank you, your honors. The government asks that the court affirm. Thank you very much for your helpful argument. Ms. Daley, why don't we give you one extra minute to catch you up? So you'll have three hours, three minutes and 55 seconds to stay. Well, anyway, go ahead. Thank you, your honor. I do want to highlight this discussion that the court has been having with the parties, which I appreciate. I find it reminiscent of the same discussions that are illustrated in the Supreme Court opinions of McNally and Skilling, where the Supreme Court ultimately said, these concerns are what makes us apply the doctrine of constitutional avoidance and the rule of lenity for a narrowing construction of a federal statute that would otherwise have limitless boundaries. And they, go ahead, sorry. I was just going to say, and they particularly chose to not include honest services fraud within the money or property traditional fraud in McNally. And for similar reasons in Skilling, they said, honest services has to be confined to its core conduct of bribes and kickbacks. My view is- My question is, where, I'm obviously just missing something here, but the something of value provision, where is that? Is that in the statute?  That to defraud, you have to intend to deceive and to deprive of something of value. The definition in the statute of intent to defraud. Yes, it's by case law from McNally and Cleveland that- By case law, it's not in the statute. That's right, so intent to defraud has been construed at common law and was adopted in the statutes. So it's not actually in, I'm still trying to- That's correct. Is it in high curve in the statute or not? No. Why are we construing it? The Supreme Court has told us that's what intent to defraud means. I know, but not in a, I don't think you can subject something to vagueness. Well, it's the money or property, the intent to defraud of money or property. It still has to be money or property. Yes. And the question is, how broad is that when you're talking about a bank and its core service as a financial institution? I mean, the phrase something of value is in a lot of statutes, but it's not in this one. It's commonly used in a lot of statutes. So here it has to, I mean, what it literally has to be is property. And something of value has to be understood, limited by that statutory language. Yes, Your Honor, I would agree with that. Can I briefly, or maybe swiftly, address the standard of harmlessness and the accurate information theory? Because our view and our strong view is that if accurate information as argued to the jury, as charged in the indictment, as presented to the district court is invalid, this court needs to impose harmless error review when those principles are at their peak. Because the jury was never given the correct theory of how the statute is supposed to work. And instead was given this pathway to a conviction that we don't know if they've followed or not. And I think the court's, if I can just for a few more seconds, the court's opinion in Perez that we cited in our reply brief, essentially says that how you look at the facts is you do all inferences in favor of the defense. And the discussion today has largely been in favor of the government. This was a robustly defended case. We tried to set out just a small hint of that defense in our reply brief, but that's why we've provided the court with the closing arguments and the closing PowerPoints, which I think show the many, many inferences that could be resolved in the favor of the defense if they didn't have this erroneous and easy pathway to a conviction. Okay. Thank you both very much for a very helpful argument, a very complicated case. The case of Gladys James versus Yates was submitted at nearly recess. Thank you very much.
judges: Berzon, Miller, Bress